IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


SUSAN PITTMAN                                                    PLAINTIFF


        v.                          CIVIL NO. 09-6092


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                  DEFENDANT

## MEMORANDUM OPINION

        Plaintiff, Susan Pittman, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claim for a period of disability and disability insurance benefits

(DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review,

the Court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision.  See 42 U.S.C. § 405(g).

## I.      Procedural Background:

        Plaintiff protectively filed her current application for DIB on July 6, 2007, alleging an

inability to work since May 15, 2006, due to right shoulder problems, high blood pressure,

neuropathy, diabetes and bipolar disorder.  (Tr. 101-103).  An administrative hearing was held

on April 15, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 21-59).  Plaintiff's

sister and a vocational expert also testified at this hearing.

By written decision dated June 10, 2009, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 9). Specifically, the ALJ found Plaintiff had the following severe impairments:

> anterior and superior labral tear and a small muscular tear between the supraspinatus muscle and the scapular status post two repairs of a superior labrum from anterior to posterior (SLAP) lesion and arthroscopic debridement of an unstable anterior os acromiale; Type II diabetes mellitus; neuropathy of bilateral lower extremities; and bipolar I disorder, most recent episode depressed, severe, without psychotic features.

However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 9). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform a wide range of sedentary work. (Tr. 11). Specifically the ALJ found the following:

> The claimant can occasionally lift less than 10 pounds; sit 6 hours during an 8 hour workday; and stand/walk 2 hours during an 8 hour workday. In addition, the claimant would not be able to use her dominant right upper extremity to perform any over head reaching; interpersonal contact would need to be incidental to work performed; and she would be limited to unskilled works tasks which could be no more complex than those learned and performed by rote, few variables, little judgment, and requiring only simple, direct, and concrete supervision.

(Tr. 11, 18). With the help of a vocational expert, the ALJ determined Plaintiff could perform other work as a production assembler. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on September 10, 2009. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 4). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 10, 11).

AO72A
(Rev. 8/82)

**II.    Evidence Presented:**

At the administrative hearing on April 15, 2009, Plaintiff testified she was forty-seven years of age and  obtained a tenth grade formal education.  (Tr. 24).  Plaintiff testified she had also earned her general equivalency diploma.  The record reflects Plaintiff has worked as a janitor, a kitchen worker and a deli worker.  (Tr. 53-54).

Prior to the relevant time period, medical evidence reveals Plaintiff sought treatment for high blood pressure which was under good control, thumb pain, burning feet, and shoulder pain. (Tr. 104, 162, 168, 226-227, 230, 232, 234, 236-238, 240, 322, 325, 327, 329).

The pertinent medical evidence during the relevant time period reflects the following. Clinic notes dated May 17, 2006, report that Plaintiff complained of right shoulder pain. (Tr. 224-225, 318-319).  Dr. Jeffery Bearden noted Plaintiff had a decreased range of motion with the right shoulder.  Dr. Bearden diagnosed Plaintiff with a right shoulder strain and prescribed Flexeril and Hydrocodone.  Dr. Bearden also recommended Plaintiff turn this over to her previous employer.

On June 14, 2006, Plaintiff underwent a MRI of the right shoulder which revealed mild downward sloping of the acromion process that could be associated with an impingement.  (Tr. 171).

Treatment notes dated June 30, 2006, reveal Plaintiff's complaints of right shoulder pain that sometimes radiated down the right arm.  (Tr. 172).  Plaintiff reported this pain began after an accident at work on March 6, 2006.  Upon examination, Dr. Lawrence Dodd noted Plaintiff had mildly limited range of motion with forward flexion and abduction.  Plaintiff was positive for  impingement pain and had good rotator cuff strength.  Dr. Dodd opined Plaintiff had some

-3-

impingement and bursitis which appeared to be an inflammatory problem. Dr. Dodd opined that Plaintiff's problem was from overuse and repetitive motion. Plaintiff was given an injection and encouraged to do flexibility exercises.

Treatment notes dated July 14, 2006, report Plaintiff returned for a follow-up for her shoulder. (Tr. 172). Plaintiff reported the shot helped minimally. Dr. Dodd opined Plaintiff's exam was still consistent with impingement. Dr. Dodd recommended Plaintiff undergo physical therapy treatment.

Treatment notes dated August 11, 2006, indicate Dr. Dodd called in medication refills to the pharmacy. (Tr. 172).

Treatment notes dated August 16, 2006, report Plaintiff returned for a right shoulder follow-up. (Tr. 172). Dr. Dodd noted Plaintiff had made some progress since her last appointment and that Plaintiff's pain level was now tolerable with her activities. Dr. Dodd recommended continued conservative management. Plaintiff was to let Dr. Dodd know if her pain worsened.

On September 7, 2006, Plaintiff underwent electrodiagnostic testing. (Tr. 173-175). Dr. Reginald J. Rutherford noted Plaintiff demonstrated normal muscle bulk and tone in both upper extremities. Plaintiff denied numbness in the right hand. Dr. Rutherford found Plaintiff's nerve conduction study demonstrated evidence for mild right carpal tunnel syndrome. Dr. Rutherford opined this might be a residual from prior carpal tunnel surgery or may represent recurrent carpal tunnel syndrome. Dr. Rutherford noted no current symptoms to suggest that this was clinically symptomatic. Dr. Rutherford noted no evidence of diabetic neuropathy and no abnormality in the right arm specifically, no evidence for radiculopathy or plexopathy.

AO72A
(Rev. 8/82)

On September 7, 2006, Dr. Charles E. Pearce, Jr., reported Plaintiff had undergone a functional capacity evaluation that showed unreliable effort. (Tr. 176-193). Dr. Pearce noted that because of Plaintiff's effort she was placed in a sedentary work position. (Tr. 176). Dr. Pearce stated it appeared Plaintiff was not consistent in many areas and he opined that Plaintiff could perform the types of activities that Plaintiff did with her regular job. Dr. Pearce noted nerve conduction studies showed no evidence for radiculopathy or plexopathy. Dr. Pearce noted that studies showed right carpal tunnel syndrome and that Dr. Rutherford opined this could have been a possible residual from previous right carpal tunnel surgery. Upon physical evaluation, Dr. Pearce opined Plaintiff had pain behavior and would not allow much movement of her arm. Dr. Pearce noted that this was not consistent with her mechanism of injury or the MRI but was consistent with unreliable effort. Dr. Pearce diagnosed Plaintiff with right shoulder arm pain with no objective finding. Dr. Pearce indicated that there was no indication for further diagnostic testing or surgery. Dr. Pearce opined Plaintiff could return to her regular duties without restriction.

Treatment notes dated September 8, 2006, report Plaintiff's complaints of right shoulder and great toe pain. (Tr. 222-223, 316-317). Dr. Bearden noted Plaintiff suffered from some neuropathy at the lower distal extremities from her diabetes. Dr. Bearden diagnosed Plaintiff with right shoulder pain, neuropathy and Type 2 diabetes.

On October 25, 2006, Plaintiff was seen by Dr. J. Kevin Rudder for complaints of right shoulder and arm pain. (Tr. 209). Dr. Rudder noted Plaintiff sustained an injury to her shoulder earlier in the year. Plaintiff complained of pain and tenderness associated with any attempts at range of motion. Dr. Rudder noted Plaintiff held her right upper extremity abducted next to her

body and was unwilling to shake hands with it.  Dr. Rudder noted an exam otherwise showed that Plaintiff had mild scapular winging on the right.  Plaintiff had a mildly positive Phalen's test. Dr. Rudder recommended Plaintiff undergo a MRI of the cervical spine and right shoulder. Dr. Rudder noted a previous MRI was worthless.  Plaintiff was prescribed a TENS unit and was trained on how to operate it.

On October 31, 2006, Plaintiff underwent a cervical MRI that revealed mild degenerative changes at C4-5 and C5-6.  (Tr. 214).  Dr. Mark Russell noted no canal stenosis or significant nerve root compression.  A MRI of Plaintiff's right shoulder revealed findings suggestive of an anterior and superior labrale tear. (Tr. 215).  Dr. Russell noted that there was also fluid to the supraspinatus muscle which could represent a small muscular tear. Dr. Russell opined that the tear was not thought to represent tendinosis or a rotator cuff tear.

Clinic notes dated November 2, 2006, report Plaintiff had a long standing history of shoulder pain.  (Tr. 208).  Plaintiff reported the TENS unit had helped substantially.  Dr. Rudder noted that an exam revealed severe periscapular pain and tenderness along the border of her scapula.  Dr. Rudder stated that a review of the MRI of the right shoulder showed a superior labrale tear and a rotator cuff tear.  Dr. Rudder diagnosed Plaintiff with a rotator cuff tear and a SLAP lesion. Dr. Rudder recommended surgical intervention. Plaintiff was prescribed Soma and Norco for pain.

Clinic notes dated December 15, 2006, report Plaintiff came in for a follow-up for her shoulder.  (Tr. 205).  Plaintiff reported she was doing relatively well.  Dr. Robert J. Olive, Jr., noted that Plaintiff was anxious to get back to work to some degree.  Dr. Olive wanted Dr. Rudder to make a suggestion in terms of Plaintiff's working. Upon examination, Dr. Olive noted

-6-

Plaintiff's shoulder was relatively normal in color, temperature, sensation and texture.  Plaintiff was given Norco 10 and Soma and instructed to return in one week.

Clinic notes dated December 21, 2006, report Plaintiff was in for a follow-up status post surgical repair. (Tr. 204).  Dr. Rudder recommended Plaintiff continue with physical therapy and to return in four weeks.

Treatment notes dated January 8, 2007, report Plaintiff's complaints of a sore throat and fever for the past two days.  (Tr. 220, 314).  Plaintiff was diagnosed with strep throat and prescribed medication.

Clinic notes dated January 26, 2007, report Plaintiff re-injured her shoulder and was unable to move her shoulder due to pain.  (Tr. 203).  Upon examination, Dr. Rudder noted Plaintiff had severe pain and tenderness with any attempt at range of motion. An x-ray did not show further injury or dislocation.  Dr. Rudder recommended Plaintiff undergo a repeat MRI.

Plaintiff underwent a MRI of her right shoulder on February 8, 2007 that revealed a tear that extended to the superior margin of the labrum and postoperative changes from arthroscopic shoulder surgery.  (Tr. 211).

Clinic notes dated March 2, 2007, report Plaintiff had a recurrent injury after her SLAP repair in December 2006.  (Tr. 201-202).  Dr. Rudder noted Plaintiff was uncertain about what she did.  Upon examination, Dr. Rudder noted Plaintiff was very hesitant to move her shoulder. Plaintiff exhibited pain and tenderness at any attempts at range of motion.  Dr. Rudder noted that a MRI showed Plaintiff had re-torn her labrum.  Dr. Rudder recommended an arthroscopic SLAP repair.

-7-

Clinic notes dated March 28, 2007, report Plaintiff was in for her first post-op follow-up. (Tr. 200). Plaintiff reported she was doing excellent at that time. Dr. Rudder noted he would continue Plaintiff's use of a sling and that Plaintiff would be starting physical therapy in two weeks.

Clinic notes dated May 8, 2007, report Plaintiff had come in for her two week follow-up. (Tr. 199). Dr. Rudder noted Plaintiff continued to have pain and to ask for copious amounts of Norco and Soma. Dr. Rudder opined it would be best to proceed with a functional capacity evaluation. Upon examination, Dr. Rudder noted Plaintiff's shoulder exhibited good range of motion without crepitus. Plaintiff was to continue with physical therapy.

Treatment notes dated May 8, 2007, report Plaintiff returned for a diabetic check up. (Tr. 218, 312). Dr. Bearden noted Plaintiff had no complaints regarding her diabetes. Upon examination, Dr. Bearden noted Plaintiff did not exhibit flank pain or tenderness of the back and that there were no abnormalities of her feet. On May 9th, treatment notes indicate Plaintiff was given instructions on proper foot care and shoes. (Tr. 217). Blood work showed Plaintiff's diabetes was under good control. (Tr. 242).

Clinic notes dated July 5, 2007, report Plaintiff had completed her physical therapy. (Tr. 198). Dr. Rudder noted he took Plaintiff's measurements and that Plaintiff had extensive loss of range of motion and pain. Dr. Rudder opined he had done the best that he could for Plaintiff and that Plaintiff was at her maximum medical improvement. Plaintiff was discharged and instructed to return on an as needed basis.

On August 13, 2007, Plaintiff complained of a right ear ache. (Tr. 216, 309, 353). Dr. Bearden diagnosed Plaintiff with a right ear infection and burning feet.

On August 15, 2007, Plaintiff underwent a mental diagnostic evaluation performed by Dr. Rhonda L. Tannehill.  (Tr. 246-259).  Plaintiff reported a prior diagnosis and treatment for anxiety with medication management but denied therapy.  Plaintiff complained of a persistent depressed mood and reduced energy level.  Dr. Tannehill noted Plaintiff was taking Xanax for anxiety and Temazepam for insomnia.  This medication was prescribed by Dr. Bearden.  Dr. Tannehill noted Plaintiff was frequently tearful during the session.  Throughout the course of the evaluation, Dr. Tannehill noted Plaintiff's speech was logical, relevant, goal-directed and without remarkable circumstantiality.  Dr. Tannehill diagnosed Plaintiff with bipolar disorder, most recent episode depressed, severe, without psychotic features; sexual abuse of a child, victim, now an adult; and bereavement.  Plaintiff was given a global assessment of functioning score of 45-55. Dr. Tannehill also noted Plaintiff's report of difficulty completing household tasks due to pain.  Plaintiff reported she could handle money but her husband said she spent whatever money she had without keeping up with it. Dr. Tannehill noted Plaintiff was able to sustain a reasonable degree of cognitive efficiency and was able to track and respond to various questions and tasks without remarkable slowing or distractibility. However, Dr. Tannehill noted Plaintiff exhibited a pattern of increasing fatigue and moderate loss of efficiency toward the end of the session.  Dr. Tannehill opined it would be difficult to predict how this would play out over the course of an eight hour workday.  Dr. Tannehill noted Plaintiff responded well to basic assessment of attention and concentration capacity with a slight loss of cognitive efficiency.  Plaintiff's persistence was viewed as adequate and Plaintiff's capacity to perform within a basically acceptable time frame was demonstrated.

-9-

On August 22, 2007, Dr. Jerry Thomas, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull limited to ten pounds or less and was restricted in overhead reaching on the right; and that postural, manipulative, visual, communicative or environmental limitations were not evident. (Tr. 265-272). After reviewing all the evidence, Dr. Jim Takach affirmed Dr. Thomas's findings on October 9, 2007. (Tr. 260).

On September 10, 2007, Dr. Kathryn M. Gale completed a psychiatric review technique form indicating Plaintiff had mild restrictions of her activities of daily living; moderate difficulties in maintaining social functioning; moderate deficiencies of concentration persistence or pace; and had no episodes of decompensation. (Tr. 278-291). Dr. Gale's notes indicate the following:

> Claimant has no mental health treatment. She does get meds for anxiety and insomnia from her PCP. She reports significantly limiting physical symptoms. On recent exam she is given diagnosis of bipolar disorder. Moderate limitation of function due to mental issues is noted, but not at a level of severity which would preclude all work. She seems capable of unskilled work.

(Tr. 290).

On the same date, Dr. Gale completed a mental RFC assessment stating Plaintiff had moderate limitations in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace

-10-

without an unreasonable number and length of rest periods; and the ability to interact appropriately with the general public. (Tr. 297-300). Dr. Gale concluded that Plaintiff "is able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, with few variables, uses little judgement; supervision required is simple, direct and concrete. Unskilled work. " (Tr. 299). After reviewing all the evidence, Dr. Jerry R. Henderson affirmed Dr. Gale's findings on October 9, 2007. (Tr. 273).

Treatment notes dated October 2, 2007, report Plaintiff presented with a history of Type 2 diabetes and neuropathy. (Tr. 307, 351). Dr. Bearden noted Plaintiff complained of burning feet which Dr. Bearden attributed to neuropathy and diabetes. Plaintiff also complained of chronic right shoulder pain. Upon examination, Dr. Bearden noted Plaintiff's right shoulder had limited range of motion secondary to pain. Plaintiff's feet showed some mild neuropathy with hyperesthesias. Plaintiff had good distal capillary refill. Dr. Bearden diagnosed Plaintiff with Type 2 diabetes, neuropathy, burning feet syndrome and right shoulder pain. Plaintiff was prescribed medication.

Treatment notes dated April 7, 2008, report Plaintiff had a history of Type 2 diabetes, neuropathy, and hyperthyroidism. (Tr. 304, 348). Plaintiff came in for blood work. Dr. Bearden noted Plaintiff had neuropathy changes with good capillary refill.

Treatment notes dated August 19, 2008, report Plaintiff's complaints of right shoulder pain and bilateral foot and palm pain. (Tr. 303, 347). Plaintiff reported the Neurontin was no longer working. Upon examination, Dr. Bearden noted Plaintiff had a decreased range of motion

-11-

of her right shoulder.  Dr. Bearden noted Plaintiff's affect was normal.  Plaintiff was prescribed medication and given an injection in her right shoulder.

Treatment notes dated October 1, 2008, report Plaintiff's complaints of diffuse off and on knee pain for the past month. (Tr. 302).  Dr. Bearden noted Plaintiff had no discoloration of her feet and that pedal pulses were noted.   Dr. Bearden noted Plaintiff's knee was tender with a small amount of swelling.   Dr. Bearden diagnosed Plaintiff with knee pain secondary to bursitis.

Treatment notes dated October 16, 2008, report Plaintiff's complaints of chest pain for which she sought treatment at an emergency room.  (Tr. 345).  Plaintiff reported continued pain and feeling ill.  Dr. Bearden diagnosed Plaintiff with bronchitis, diabetes, being overweight, right shoulder pain and muscle spasm.  Plaintiff was prescribed medication and instructed to follow-up as needed.

Treatment notes dated December 30, 2008, report Plaintiff's complaints of bilateral lower extremity pain from the knee down and low back pain.  (Tr. 342).  Treatment notes indicate Plaintiff reported that she did not have medical insurance so she was unable to see a pain management specialist. Plaintiff reported she was awaiting disability. The examining physician noted Plaintiff's neurological and psychiatric evaluations were within normal limits.  Plaintiff was diagnosed with diabetes, bilateral lower extremity neuropathy, pain, crepitus and lower back pain.

## III.    Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir.

-12-

2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be

affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d

964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the

Commissioner's decision, the court may not reverse it simply because substantial evidence exists

in the record that would have supported a contrary outcome, or because the court would have

decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other

words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ

must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden

of proving her disability by establishing a physical or mental disability that has lasted at least one

year and that prevents her from engaging in any substantial gainful activity.  Pearsall v.

Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A),

1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3),

1382(3)(c).  A Plaintiff must show that her disability, not simply her impairment, has lasted for

at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation

process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial

gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or

-13-

mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal

an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national

economy given her age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only

if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work

experience in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138,

1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

IV.    **Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled.

Defendant contends the record supports the ALJ's determination that Plaintiff was not disabled

during the relevant time period of May 15, 2006, through June 10, 2009.

A.    **ALJ's Evaluation of the Listed Impairments:**

Plaintiff argues that she met Listing 1.06 which she states pertains to major joint

dysfunction.[1]  (Doc.. 10, p. 10).  Defendant contends there is substantial evidence in the record

to support the ALJ's determination that Plaintiff does not meet Listing 1.02.

To meet the requirements of Listing 1.02, Plaintiff must establish that she suffers from

a "major dysfunction of a joint" caused by a "gross anatomical deformity" with involvement of

"one major peripheral weight-bearing joint" or involvement of "one major peripheral joint in

each upper extremity."  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.02.  Plaintiff claims that

the medical records regarding her right shoulder show that she meets the requirements of Listing

---

[1]As noted by Defendant, Plaintiff cites Listing 1.06 from 1991 when arguing that she meets the Listing for a major
joint dysfunction.  (Doc. 10, p. 10).  Listing 1.06 presently pertains to fracture of the femur, tibia, pelvis or one or
more of the tarsal bones. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.06.  The proper Listing for dysfunctions
of the joints is Listing 1.02.

1.02.  While a review of the medical records show Plaintiff has limitations with the use of her right shoulder, there is no medical evidence to show that Plaintiff has any limitations regarding the use of the left upper extremity.  See Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir.2004) (noting that the plaintiff has the burden of proof of establishing that his or her impairment meets or equals a Listing).  Because Plaintiff has not established that she suffers from a major dysfunction of one weight-bearing joint or a major joint in each upper extremity, she cannot establish that she meets Listing 1.02.

   **B.     Subjective Complaints and Credibility Analysis:**

   We first address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

   After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  Although Plaintiff's contends that her right shoulder pain,

diabetes, neuropathy, pain, and mental impairments are disabling, the evidence of record does not support this conclusion.

A review of the medical evidence reveals Plaintiff injured her right shoulder in March of 2006 and underwent two surgical repairs in December of 2006 and March of 2007. Following the second surgery, Plaintiff reported she was doing "excellent" on March 28, 2007. On May 8, 2007, Dr. Rudder noted Plaintiff continued to have pain and to ask for copious amounts of Norco and Soma and he recommended Plaintiff undergo a Functional Capacity Evaluation. The ALJ pointed out that the record failed to show Plaintiff scheduled this evaluation. In May of 2007, Dr. Rudder noted Plaintiff exhibited good range of motion of the right shoulder without crepitus. On July 5, 2007, Dr. Rudder noted Plaintiff had completed physical therapy and that he had taken measurements of Plaintiff and that she had extensive loss of range of motion of the right shoulder and pain. Dr. Rudder opined he had done all that he could for her and discharged Plaintiff with instructions for her to return on an as needed basis. Dr. Bearden noted Plaintiff had a limited range of motion with her right shoulder on October 2, 2007 and August 19, 2008. On October 1, 2008, Plaintiff complained of knee pain and did not report pain in her right shoulder. Plaintiff testified that Dr. Rudder told her that her right shoulder was "ruined" (Tr. 29); however, the ALJ pointed out that the medical evidence failed to report that her right shoulder impairment was of that severity. While the record clearly shows that Plaintiff has some limitation regarding the use of her right shoulder, the ALJ addressed the medical evidence, other relevant evidence and Plaintiff's testimony regarding the use of her shoulder and limited Plaintiff to no overhead reaching with her right upper extremity and no more than ten pounds of occasional pushing and pulling.

-16-

The medical evidence further reveals Plaintiff has been diagnosed with diabetes and associated diabetic neuropathy of the feet.  As for Plaintiff's diabetes, the medical evidence reveals Plaintiff's blood sugars are controlled with diet and medication.  <u>Davidson v. Astrue</u>, 578 F.3d 838, 846 (8th Cir. 2009)(impairments that are controllable or amenable to treatment do not support a finding of disability).  Regarding Plaintiff's foot neuropathy, Plaintiff testified that even with the use of Neurontin that she had a constant burning sensation in her feet.  In addressing Plaintiff's foot neuropathy, the ALJ pointed out that the record does not show Plaintiff consistently complained of ongoing severe foot numbness and pain to her treating physicians.  In May of 2007, Dr. Bearden noted Plaintiff had no foot abnormalities.  The medical evidence reveals that Plaintiff did complain of foot pain in August of 2007 and that in October of 2007 Dr. Bearden diagnosed Plaintiff with mild neuropathy with hyperesthesias. At that time, Dr. Bearden noted Plaintiff had good distal capillary refill. In October of 2008, Dr. Bearden noted Plaintiff had no discoloration of her feet and that pedal pulses were present.  While Plaintiff clearly has some neuropathy of the feet, we find substantial evidence of record to support the ALJ's finding that Plaintiff's foot neuropathy is not of a disabling nature.

Regarding Plaintiff's alleged neuropathy of her hands with associated difficulty grasping and holding, a review of the medical evidence reveals that Plaintiff underwent elecrodiagnostic testing in September of 2006, and that Dr. Rutherford found evidence of mild right carpal tunnel syndrome that might have been a residual from a previous carpal tunnel surgery or it might represent a recurrent carpal tunnel syndrome.  Dr. Rutherford found no current symptoms to suggest that Plaintiff was clinically symptomatic for carpal tunnel, no evidence of diabetic neuropathy, and no abnormality in the right arm. While Plaintiff's testified that she had severe

-17-

pain and numbness in her hands and fingers on a daily basis, the ALJ pointed out that Plaintiff failed to mention this ongoing problem to her treating physicians.  Furthermore, a review of the record reveals that after September of 2006, Plaintiff reported palm pain once in August of 2008. We find substantial evidence of record to support the ALJ's determination that Plaintiff does not have disabling neuropathy of the hands.

Regarding Plaintiff's mental functioning, the ALJ pointed out that while Plaintiff alleged disabling depression, anxiety, panic attacks and bipolar disorder, the record showed Plaintiff had never received treatment for these alleged impairments other than a prescription for Xanax at a consistent dosage level by her primary care physician. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).  The ALJ pointed out that Plaintiff had never been prescribed medication for bipolar disorder.   In assessing Plaintiff's mental functioning, the ALJ made the following notations about Dr. Tannehill's August 15, 2007, evaluation:

> In outlining the claimant's adaptive functioning, Dr. Tannehill indicated that the claimant drove herself to the appointment and was able to drive to unfamiliar places; she used the microwave and cooked canned goods; shopped with her sister or husband; she appeared capable of adequate and socially appropriate communication and she appeared to be appropriate with behavior and her current functioning was stable; she appeared to sustain a reasonable degree of cognitive efficiency and was able to track and respond to various kinds of questions and tasks without remarkable slowing or distractibility, however, she exhibited a pattern of increasing fatigue and moderate loss of efficiency toward the end of the session; she generally responded adequately to basic assessment of attention and concentration capacity and this was consistent with the broader capacity to attend reasonably well to the demands of the overall evaluation; she did not display loss of basic persistence and persistence was viewed to be adequate, and she did not display remarkable psychomotor slowing and her capacity to perform within a basically acceptable time from was demonstrated.   The mild to moderate

-18-

limitations in this area would be likely associated with the depressive loss of
energy and cognitive efficiency and not an on-going cognitive issue.

(Tr. 17).  Based on Dr. Tannehill's evaluation coupled with the RFC completed by Dr. Gale who

reviewed all of the medical evidence specifically citing Dr. Tannehill's findings and the

remaining evidence of record showing a lack of ongoing and consistent treatment for her mental

impairments, we find substantial evidence to support the ALJ's determination that Plaintiff's

mental impairments are not disabling.

Furthermore, while Plaintiff alleged an inability to seek mental health treatment due to

a lack of finances, the record was void of any indication that Plaintiff had attempted to seek

treatment at a free clinic or had been denied treatment due to the lack of funds. Murphy v.

Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought

low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's

contention of financial hardship).

Plaintiff's subjective complaints are also inconsistent with evidence regarding her daily

activities. The ALJ pointed out that the records indicate Plaintiff was able to drive a car, watch

television, microwave and cook canned goods, and shop with her sister and husband.  Plaintiff

also reported that while she did experience some discomfort she was able to do some household

chores and could take care of her personal needs. (Tr. 127-134).  This level of activity belies

Plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the

ability to perform such activities contradicts a Plaintiff's subjective allegations of disabling pain.

See Hutton v. Apfel, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of

claimant's application supported by substantial evidence where daily activities– making

-19-

breakfast, washing dishes and clothes, visiting friends, watching television and driving-were

inconsistent with claim of total disability).

      Therefore, although it is clear that Plaintiff suffers with some degree of pain, she has not

established that she is unable to engage in any gainful activity. See Craig v. Apfel, 212 F.3d 433,

436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not

mandate a finding of disability); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding

that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not

support a finding of disabled). Neither the medical evidence nor the reports concerning her daily

activities support Plaintiff's contention of total disability. Accordingly, we conclude that

substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were

not totally credible.

      **C.**     **RFC Assessment:**

    We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can

do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant

evidence in the record. Id. This includes medical records, observations of treating physicians and

others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d

798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).

Limitations resulting from symptoms such as pain are also factored into the assessment. 20

C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that

a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700,

704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be

supported by medical evidence that addresses the claimant's ability to function in the workplace."

-20-

Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when he determined Plaintiff could perform sedentary work with limitations.  Plaintiff's capacity to perform this level of work is supported by the fact that Plaintiff's examining physicians placed no restrictions on her activities that would preclude performing the RFC determined.  See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). The ALJ clearly took into account limitations caused by Plaintiff's right shoulder limitations, mild foot neuropathy and mental limitations.  Based on the record as a whole, we find substantial evidence to support the ALJ's RFC determination.

### D.      Hypothetical Question to the Vocational Expert:

We now look to the ALJ's determination that Plaintiff could perform substantial gainful employment within the national economy.  We find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  See Long v. Chater, 108 F.3d 185, 188 (8th Cir. 1997); Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996).  Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff is not disabled as she is able to perform work as an unskilled production assembler.  See Pickney, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

-21-

**V.**     **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 10th day of December 2010.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-22-